Number 18-1062 Sun Chemical Corp v. Fike Corp, et al. Mr. Kallak? Kallak or Kallak? Kallak. And Macaulay? Macaulay. I'll get it right one of these days. Put the impostos in the wrong syllable. Whenever you're ready. Well, with court's permission, I'd like to reserve three minutes for rebuttal. Yes, you're granted. And better state your name and who you're representing. Lance Kallak, Record Danzig, Shearer Highland, and Peretti for the Appellant Sun Chemical Corporation. Okay, go ahead. May it please the court, I'm going to address two issues. The first is whether Sun's Consumer Fraud Act claim is subsumed by the Products Liability Act. And the second is whether there were sufficient material facts below to necessitate a trial in this case. With respect to subsumption, Sun's primary position is that the vast... I mean, just from 10,000 feet. That the system that was put in was not reasonably suited or designed to perform the purpose for which you bought it. No. The claim is that there were specific representations with respect to certain features of this product. Is that what the complaint said? The complaint certainly has representations, we believe with specificity, with respect to... Something under... It looked to me like, you know, what we call... Your basic claim was the blowback theory, as it's referred to. That was certainly referred to in the complaint, yes. And then when you got to summary judgment, there were other things that you were... I mean, we know that under the Product Liability Act, there is an exception for expressed misrepresentations. And so you add six different things, at least it appears that they were added, that may relate to misrepresentations. But wouldn't a better thing to do have been to attempt to amend the complaint? Well, I do think that the complaint, if you read it fairly, does have specific representations that relate to alarms. That relate to integration. In paragraph 23, for instance, of the fight components to the process equipment that exists in the factory. That do relate to compliance with FFM standards. Relating to doesn't assert the claim, does it? I'm sorry? Relating to doesn't assert the claim, does it? The complaint asserts specific misrepresentations that were then developed in discovery. We survived two motions to dismiss that were brought. In discovery, we established that there were other specific misrepresentations. And then that was what was addressed on the despised motion practice. Was there any specific allegation in the complaint as to a misrepresentation on the audibility of the alarm or the integration of the alarm? So we would rely... The answer is yes. We would rely with respect to the audible alarms. The complaint alleges that there were misrepresentations that the system would comply with NFPA 69. And also that the control panel would maintain certain functions. And part of the functions of the control panel was the audible alarm. That's a theory. It depends on what you're alleging as to audibility to the incorporation of 72. And where is there any specificity as to an issue of audibility of the alarm given the numerous issues that are covered under 69? So other than just saying that the system was represented to comply with NFPA 69, and that the control panel would have various functions that were represented to have protective properties, there wasn't anything specific saying audibility that the alarm was going to be represented to be audible in the complaint. That was developed in discovery. And that the defendant had notice of it. It was part of the expert reports that were submitted. The experts were deposed. There were Dalbert motions related to these experts. It was the subject of the dispositive motion practice. So from a notice perspective, the defendant had plenty of notice that one of the issues in this case was representation that these alarms were going to be audible. They filed a motion under Rule 9 saying that they didn't. Not in the dispositive motion practice. That was part of the Dalbert motions, which were not ruled to apply. Is your claim with respect to the alarm under the Product Liability Act or is it the Consumer Fraud Act? Consumer Fraud. And the primary argument is why our claim is not subsumed is because we have suffered purely economic losses. But did you allege a claim under the Consumer Fraud Act? Absolutely. In fact, that's the only claim we alleged was the Consumer Fraud Act. And it's in your complaint? Absolutely. There is no claim under the Product Liability Act alleged in our complaint. We only pursued a Consumer Fraud Act claim. Isn't that a problem in that at a minimum you argue one of the things that the district court erred was granting summary judgment when you asked for relief that included the cost of the product system itself? Correct. And that is by its terms excluded from the PLA? Correct. Correct, because we didn't bring a PLA claim. We only brought a Consumer Fraud Act claim. But why didn't you move at any point? I mean, either plead a PLA claim in the alternative or seek leave to amend in conjunction with summary judgment with these doubts arising as to what constituted a misrepresentation versus a failure to warrant a product defect claim. Because 95 percent of our damages, $5 million of our damages are economic loss that are not cognizable under the Products Liability Act. Well, you make that allegation, but it seems to turn on the theory that where the underlying injury is injury to third parties, that your losses then can't be covered. And I'd like to explore that a little bit, because the terms of the statute itself define harm to mean not only personal physical injury, but also under subsection D, other loss deriving from any type of harm described in subparagraphs A through C. Correct. Why isn't what you suffered a type of loss that's deriving from personal physical injury? The statute refers to loss deriving from personal physical injury or property damage to me, not to somebody else. And if you look at Dean, the New Jersey Supreme Court case in Dean, they rely on the Restatement Section 21. Restatement Section 21 addresses this specifically and says that a second category of economic loss excluded from coverage of this restatement includes losses suffered by a plaintiff, but not as a direct result of harm to the plaintiff's person or property. And it gives two examples, one in Section D and one in the illustration. In the first example, a building is destroyed by a faulty product. The employee stopped going to a neighborhood restaurant. The restaurant suffers economic loss. The restatement says that restaurant cannot sue for product under tort because they haven't suffered any harm because there is no physical damage or injury to them. They've only suffered economic loss due to the physical damage to somebody else. We have property damage, and we can talk about that and what losses derive from that. But we also have the New Jersey Supreme Court addressing in the lead paint decision the idea that a municipality, an entity, can, under the PLA, seek to recover costs that were associated with the injuries of members of its public. And the education costs that went along with that, as well as their medical costs. Why isn't that the New Jersey Supreme Court, as they describe the harms that plaintiffs seek to vindicate in that action, as, quote, addressed in the context of a product liability claim and fitting the definition of physical damage to property, personal, physical illness, or injury? So there's a couple issues with the lead paint case. First of all, the entire section on the PLA is really dicta. The main part of that case deals with whether the municipalities have a nuisance claim and whether they can step into the shoes of their residents and pursue a nuisance claim. And then the court says, in any event, we don't think that a common law claim is appropriate here, that these are classic defective product cases that are being brought on behalf of a dangerous product, which is the prototypical product defect case. They said, so in any event, this case would be more proper under the Products Liability Act. They don't address the issue that we're addressing here and that Dean addresses, that our losses are purely economic loss. There was also some suggestion, I think, in that case that the municipalities may have suffered their own damages in some of their own buildings. But I just don't think that that issue was fully developed in the lead paint case. So you say, Mr. Kerlik, that you, in your complaint, pled a Consumer Fraud Act claim based on the alarm and the representations made to you concerning that alarm, but that the alarm failed. Is that accurate? No. No, that the alarm did not have the required level of audibility that was represented in the various. It did not perform the way you were told it would. It was misrepresented. The nature of the alarm was misrepresented. Correct. And the district court said, yes, it did perform. It did make a sound, as it was supposed to. Correct. What's wrong with that response? The problem with that response is the district court evaluated the evidence and made credibility determinations with respect to two experts. Incidentally, this is the essence of your case, isn't it? The audibility of the alarms is certainly one of the main representations that we rely on to show that there was a misrepresentation in violation of the Consumer Fraud Act that caused loss to us. Absolutely. And what the district court did is it looked at our experts, by the way, who are one is an electrical engineer and a certified fire and explosion expert. One is a chemical engineer and a certified fire and arson investigator who sits on the technical committee that writes, that advises on standards, including the NFPA at issue in this case. Both of those experts, one of them did an audibility study and determined that in four locations right near the control panel that the relative sound emitted by the PISO alarm, which was represented to be an audible alarm that was going to emit sound, the relative sound was less than five decibels at four different locations. And these two experts said that that would not comply with the standards, one of those experts who helps to write those standards. But that depends on the incorporation of 72, right? Not entirely. Not entirely because there's other bases other than just the incorporation of 72 into 69. There's the FM standards, 5700. There's the fact that FIPE representatives themselves said that the purpose of the PISO alarm was to alert people in the immediate area so that they could hear it. And essentially the opinion of these experts is that this was no louder than breathing and rustling leaves. But the opinion of these experts included, one, that it was audible, although there's a dispute about how audible and given the ambient noise, whether that was sufficient given the context it was in. But also your own experts, Dr. Myers, talks about the continuous tone being less easily recognized than intermittent tones, which sounds very much like a design defect type of claim. It was making noise, but it would have been more audible if it were intermittent rather than continuous. And again, this was put in an enclosure called a NEMA 4 enclosure. I think that's what you're referring to. It's like a glass case. If you imagine a fuse box, it's sort of doors to a fuse box. And that actually vitiated the FM compliance of the product, which was a representation made to Sun that induced them to purchase the product. It was one of the representations that was important to them. So again, that related to a representation that was made that was untrue. Well, let's stick with the audibility representation for the moment. Why isn't it a legal question? You're saying that the district court was making credibility determinations about experts. But on the basic question of whether it needed to have the sound level of a system-wide, a building-wide fire alarm, in other words, whether it incorporated 72, the district court approached that as a question of law, looking at the language of the standard, the context of it, and went through a pretty in-depth analysis about why it would make no sense, given the language and context, to treat it as incorporating a building-wide audibility standard. Why isn't that a legal question, and why isn't it right on the merits? First of all, the experts don't say this is a building-wide audibility standard. What the experts said is that this should have been heard in the immediate vicinity of the control panel, and there's testimony that some of the injured workers walked right by the alarm to go fight the fire in the moments after the fight system was activated but before the explosion. So they don't suggest that the PISO alarm should have been alarmed for the entire building. There are different representations made that the control panel would integrate into the fire alarm system, but that's a different representation that was also untrue. With respect to the audibility aspect, the reason why it's a fact question is because, number one, it was represented that it was going to be audible in numerous different ways that we outlined in our brief. Number two, we have experts in the field who've testified that we know what audibility standards mean. In fact, one of the standards is incorporated by 7200, I believe it was, but there's other standards here. And when somebody says audibility under NFPA 69 and under FM standards, it has to be capable of being heard, and they refer to even a dictionary definition, which is often a method that experts and juries may use to decipher words in a standard. This is in the context of a fairly substantial explosion, if I'm not mistaken, inside the workspace. Correct. So given the background of the explosion and that noise, how can you conclude that or your expert conclude that it was not heard? So the facts, Your Honor, are a little bit different, I think, than what you're envisioning. So there was first a fire. And the fire went up and the FIKE system activated. It was a suppression and isolation system. There was an explosion. Before the explosion. All right. This is before the explosion. The FIKE system activated. The alarm goes off. There's three minutes between the time that the alarm goes off, and this is taken from data right from the FIKE system. There's three minutes between the time that the alarm goes off and the explosion occurs. And that's central to our causation argument with respect to the alarms, is that the employees were taught and trained by Sun. When you hear an alarm, you exit the building. When you see a small fire, we're trained to fight it. There were lots of small fires in this facility. And employees were trained to get a fire extinguisher and put it out before it became a larger problem. The point of having an audible alarm, any alarm, is that employees knew to get out of the building. The alarm was apparently on before there was any explosion, before the fire. The FIKE system alarm went off, but it was inaudible. And the employees testified they didn't hear it, even in the immediate vicinity of the control panel. Whether your argument is that it was required to and failed to meet the audibility standard of 72, or was required to and failed to meet an audibility standard under 69, or another provision. Or 5700, whatever. Why doesn't that – your argument is it didn't. Why isn't that a classic products liability claim? We're supposed to look at the essential nature of the claim. If the claim is this product was supposed to be an audible product, that was the nature of it, that was the purpose that this thing was supposed to serve, and it failed. It didn't live up to the industry standard. Why isn't that a designer manufacturing defect that falls squarely under the PLA? So the first response is that the essential nature test is a subsidiary argument and would only come into play if we suffered harm as defined by the statute. Again, our position is that $5 million of our losses are not cognizable under the PLA, that we have no PLA claim with respect to those losses, because they are not losses that derive from our physical injury or our property damage. And under the restatement, the Batchelor case, the Napurano case, the cases – the out-of-state cases that we cite on pages 19 and 20 of our brief, all hold that the type of losses that we suffered are economic losses and are not redressable in tort. Some of them may be economic losses, but you have an underlying property loss. We have $286,000, yes. Property damage. Correct. And where you have that, why doesn't that subsume – you pleaded this as a single claim. Why doesn't that subsume the one claim you have under the PLA? Because the rest of our losses were not derived from the relative insignificant property damage. The CSB investigation that was done that closed our facility, the worker lawsuits that occurred, all of the costs that we had to do to divert production during the closure of our facility because of the CSB investigation, all of that was undertaken because of the workers' injuries, not because of the $286,000 that we had to do to fix our pre-mix room and clean some equipment. And the proof of that is – and it's in our brief – is that there would only be a CSB investigation due to serious bodily injury or substantial property damage. And the investigation was prompted in part by the late Senator Lattenberg's letter asking for an investigation because of the serious bodily injuries here. So in other words – It wasn't just because of the release of chemicals closely in a residential area. What is your basis for saying that there would not have been a chemical safety board investigation where there was property damage and release of chemicals into that environment? There wasn't any release of chemicals outside. This was all internal. But that raises a good point. If this was a noxious fume case instead of an explosion and none of our property was damaged, it would be the same situation here that – and let's say seven workers were injured. Our losses would be purely economic in responding to the injury of somebody else. If we had never suffered any property damage here, we would still suffer the economic losses due to the injury of these seven individuals. And so that's just pure economic loss. And I will note that this Court's decision in the state of Noster and Judge Hilton's decision in Kouzian both hold that where you have severable, segregable damage, economic loss that is not derived from PLA harm, and PLA harm, a plaintiff is permitted to pursue a contract-based or fraud-based claim for those purely economic losses. Is that all you have left in this case? In other words, all the PLA claims are out of this case. The only thing you have left is a failure to warrant. And that's because of your theory of damages. Yes, Your Honor. We've never brought a PLA claim. We don't think that our losses were caused by a defective product. We believe that they were caused by misrepresentation. But isn't it the case that you had brought a PLA claim and the district court concluded that the nature of these claims were product liability claims? If they are indeed subsumed by the PLA, you then would be entitled to consequential damages, compensatory damages that flowed from those claims, right? I believe that under Dean and the restatement, we would not have a PLA claim for $4.95 million of our damages. Well, the district court came to a different conclusion, and if these are subsumed under the PLA, then to the extent your argument is we're now remedy-less, isn't that only because you didn't plead a PLA claim in the alternative? If we disagree with you on subsumption. I believe that if you read the law, that our losses are not because of PLA harm as defined by the statute. So obviously, if someone disagrees with that, then PLA would have been the right remedy. But I don't think after Dean, and if you read the restatement, I don't see how that our losses, which don't derive from our own injury, can be considered PLA harm under the definition. And I will point out, just this past Friday, the state court, which is the injured worker suit, allowed to go to trial a breach of warranty claims as third-party beneficiaries of the contract between us and FUT, saying that there are material issues that require a trial with respect to some of the same representations that are an issue here, including audible alarms. And so the state court has found a fact issue with respect to some of the same issues on a breach of warranty claim, which is not a PLA claim, that we asserted here and that we were not permitted to go to it. But a breach of warranty claim that was made directly in that particular case, right? It was made directly, yes, just like our CFA claim here. Well, I mean, it looks to me, I mean, like you had initially what I call the blowback theory claim, that you thought a system that was to deal with dust and it was to suppress any possible problem that could happen from the dust in the environment, and it didn't work. That sounds like a product liability claim. Then you come and add, it looks like, at least that's what the court thought, six different additional claims, audibility claim, failure to follow 5700, failure to train, prior failures not told. I keep coming back. Why didn't you just, you wouldn't be here today if you simply had said, can we amend under Rule 15? Again, it comes down to economic laws. No, no, no. Why didn't you, I mean, there's an economic loss. You're just being here today when you didn't have to be here today. Why didn't you just move to amend? Oh, to add the other representations? Right. Because we felt that they were fairly put in our complaint, that we had survived two motions to dismiss. The other side is making claims that maybe not. So why not just take, obviate the whole problem? Say, to the extent they don't get it, we move to amend. Again, Your Honor, I believe that the court has the power to conform the pleadings to the evidence at all times. You're not answering my question. Why didn't you, as a matter of just tactics, say, I'm going to take this arrow out of their quiver? And amend the complaint? Yeah. Again, I think the feeling was that the complaint was sufficient at the time. You want to put all your eggs in that one basket. From prior counsel. You're just interested in the real. Was it really prior counsel? How did it work here? Did some people leave? Who's the new counsel? Me. And were you involved at all in that? No. Only on appeal. Only on appeal. So it looks as if counsel comes to Rule 56 and goes, hmm, there's other issues here that could be good and may put us under the CFA as opposed to the PLA. And I keep coming back, why didn't they just amend? I think that's the wrong perception. I think if you look at the complaint, it says seven times. It may be the wrong perception, but why allow the other side to make the argument that these are new claims? I can only say that they had survived two other motions of dismiss. They thought the pleading issue was behind them. And they were dealing with the discovery, the expert reports, and the factual information on a dispositive motion that they weren't even dealing with 9B issues at that point. That had already been done. There was no argument in the summary judgment briefs with respect to pleading failure because we were dealing with actual facts. Why don't we hear from Mr. McAlee, and then we'll get you back on the floor. Thank you, Your Honor. Please support Gino McAlee from Riley, McDevitt, and Henrich. I'm here with Ms. Turpin on behalf of FIPE and SSI. You have brought today a question at the outset. There was a proposed question by Sun that they suggest that we certify to the New Jersey Supreme Court. Does the PLA subsume claims brought by a plaintiff for economic loss that is consequential to the personal injury of a non-party? What is your response as to whether we should certify that? Our response is that there's clear law already established by New Jersey and followed by the federal court that doesn't at all show any requirement that there be any certification to the New Jersey Supreme Court. It's simply unnecessary. The law is set, it's here, and the test is formulated, which is the essential nature test, from which a court can determine how to proceed with this. Before I go too far into this, there's... I'm not sure that that really answers the question, because saying the essential nature of this action is a products liability action requires us to look at how that term, products liability action, is defined in the statute. It's defined by reference to harm, which has its own definition. And so is it your position that the requirement of personal physical injury is, or perhaps subsection D of the other losses, that that is satisfied under the terms of the statute by injuries to third parties, an economic loss that derives from injuries to third parties, not the plaintiff? Well, that's what I was just about to answer by saying this. There are relevant, undisputed facts, which you have all walked toward in asking questions in this case that need to be stated. First of all, the damages in this case include property damage. They clearly include damage to this room. And if I could just tell you for a moment, you're dealing with a three-story structure, most of which inside the room has to do with mixing of the chemicals, which include combustible dust. So it's in that room where this deflagration occurred, that the fire department came in, that the pipes were destroyed, et cetera. But that was all Sun property, and that was all Sun's claim for damage in that room, the cleanup costs and everything that went along with it. So this is not a case at all where Sun has not had, pursuant to the statute, physical damage to property. They absolutely have. The other portion of this that needs to be stated as a relevant and undisputed fact is that equipment and the property that we sold them was undamaged. It's not part of their claim that this was destroyed. We're not in a situation where the crane was destroyed in Napurana, where the boat was destroyed in Alaway. It has nothing to do with a claim that would fall outside of the PLA, because you're saying within the exception, except for harm to the property itself. Mr. Kalik makes, on behalf of Sun, a claim for economic damages, which apparently are not obtainable through the PLA. Well, some of them wouldn't be because there's no fee shifting under the PLA, and that's unfortunate, but there's a lot of statutes that, or a lot of causes of actions that don't contain fee shifting, where you can shift over the burdens and the cost of that suit or the regulatory cost. But a lot of them, and most of them, would be as under the statute, as Her Honor pointed out a minute ago, the harm section says physical damage to property, and then it says below it in subsection D, or other loss deriving from any type of harm described in that subsection. So they could have pled all this as a PLA case. They have always pled it only as a CFA case, despite the motion to dismiss, despite anything that came out during discovery. But their argument seems to be that we can't. We're actually dealing with different categories of harm here. And there are harms that are consequential to the property damage alone, but those are fairly de minimis. The harms that they're seeking to recover are harms that are consequential to the personal physical injuries of third parties, not of the plaintiff here. They say that wouldn't fall, it doesn't fall under the PLA by its terms. Are they right? No, they're incorrect. And the reason is, as Your Honor pointed out, In Re Paint points out in its first instance that you can make a claim for other parties that are not exactly the injured parties. In that case, they were talking about the townspeople or people who had been injured. They weren't the plaintiffs in that case. They were the representative plaintiffs. That's number one. Number two is there's nothing to indicate that the other loss deriving from the physical loss to this, they're claiming that everything stems from, and this investigation only stems from the point of view of people were injured in that room. That's the only reason we had a shutdown. That's the only reason we had these issues. That's simply incorrect. Do we have then a question that does need to be certified to the State Supreme Court in that Dean would suggest that you can't recover for third party injuries, economic losses that might flow from that? And there's language in Lead Paint that suggests if we follow that paradigm, that you can, that all of this would be subsumed and the consequential damages would be recoverable under the PLA. The reason that doesn't apply is because Dean is in the line of cases, as with Naparano and the others, and Alloway, et cetera, that deal with damage to the property itself. That's the exception in the statute. You never get there. And, excuse me, that's the UCC exception, or rather the recognition of the economic loss doctrine that they wrote right into the statute. So I think what we're dealing with here is you never get to the situation where you're dealing with those consequential damages or other third parties because those cases don't come into bear at this. And let me say this to you. When I was describing what happened before with the three stories in the room, the tanks for this system, the dust collector itself, which is just a suction device which pulls up all of this dust, is on the roof of this building. And what Flight was set out to do was to protect that device, that from exploding, because that's where the dust goes and where it formulates and where it's most dangerous. So the idea was, of having Flight come in, was to make a device that suppressed and protected the dust collector and things emanating from it. Now, strangely, when they brought this claim, they didn't plead in the alternative that we defectively didn't do that. They've never said there was a defect. You said you did that properly. But what they said in their blowback theory, which we would contend has been waived, is that that was done to a point we thought it would do more than it actually did. Let me go back to this question of the third-party losses, because I'm still wrestling with how to understand the state law here. Sinclair suggests to us that efforts to expand the definition of harm should be directed to the legislature, that that's not an exercise the court should undertake. If it's not crystal clear from the statute that the PLA covers consequential damages that flow from third-party injuries, then isn't that something that needs to be addressed, if not by the legislature, at least by the state Supreme Court in the first instance? Otherwise, don't we blow wide open the economic loss rule? Any economic injuries flowing from third-party physical injuries would then be subsumed under the PLA, right? But in fact, you're not within the economic loss rule until you have damage or destruction to the property, the product itself. And that doesn't happen here. There's not even the allegation. As a matter of fact, in the Curry case versus Abbott Labs, they talk about making a claim under the baby formula for the cost of the baby formula. That's all they're claiming here. They want the cost of the product back. So they're not saying it was damaged or destroyed. So you never get into the except for the property itself exception. They're asking for the costs that flow from injuries to the workers and the costs that flow from the federal investigations that followed as consequential to the injuries to workers. If those are categories of harm covered by the PLA, then it fits the definition. It would be subsumed. And perhaps having not amended to add a PLA claim, you're out of luck. But if it's not clear that that's covered by the PLA, then let's assume it's not. Why, then, wouldn't they be free to bring a cause of action under any other statute or other theory? Well, I think in the hypothetical world where they didn't have property damage in that room under which it already moves into being a products liability case, we might be able to talk about that situation where you say, if you had the noxious gas situation where you talk about where there's no physical damage or a personal injury to anyone in the plant, but it shuts it down and causes it, maybe that's an issue. But then aren't there other harms and other causes of action they could bring separate to that related to express warranty, implied merchandise, things like that? But what you're saying here is when you're dealing with an action that is subsumed under the PLA and the broad nature of what it's supposed to do, it's supposed to subsume. It has its place. And the courts over from Leadpain to Sinclair to McDerby to Bailey to Indian Farms have all recognized that right to subsumption, once you fall within the statute, except for if you're dealing with the harm and destruction of the product itself and consequential to that. And we're not, because the damages you're talking about don't deal with the destruction of our property and consequent to that either. What you're talking about with the harm to the workers, why wouldn't that be part of their claim, number one? And number two, the workers' compensation aspect of that, you asked about Jersey law, that is compensable in a recognized statutory lien in the third party case that they're alluding to. So they have a reason to recover that back under that and a way to recover that back in a separate action. But why would it be, if you're right, why would it be recoverable in a separate action? If it's subsumed, isn't it subsumed for all purposes? Well, we originally were looking at the case as you were, but they've chosen to bring it here as opposed to bringing it there, although I still think they have the lien over there because they're stepping in the shoes of a workers' compensation carrier. That's the damages that they pay, the workers' compensation, because they were only insured up to a certain, above a certain level. So they've taken those and placed those in another case, but they're also saying here, well, that gives us an economic loss that we couldn't recover otherwise. And there's a question about whether those do and are derived from the loss and the physical damage and what was related here. Certainly they haven't tested that because they never brought the PLA claim in the first place. So the subsumption argument is separate than the question of the economic loss. It's coming at it in a reverse way and saying we're going to look at the harm first instead of looking at the essential nature of the claim. And the essential nature of the claim in Sinclair, in all fairness, that was the test regardless of the damages that would have been awarded or the harm that was available to them. Let me try to ask this another way. If they had broken out their different claims of harm, if they had had a separate claim for damage to the product itself and a claim for other damages, your position then would be that the other damages would be subsumed under the PLA, but the claim for damage to the product itself could be addressed under another cause of action, right? I think the cases have dealt with that situation. I think Francis Parker is the class action case that dealt with the trim, the defective trim. And some of the class members had trim that was itself damaged, the damage of the harm itself. And others had only consequential damage as that. And the court says we have to let both go forward to the extent that they exist, but suggested that in the end result we're going to have to look at this and see if some are subsumed and some are not. And that was a question because you went into the area of the harm to the product itself by entering into that sphere. But that isn't this case at all. Why is that really different? Because if you're going to take that, if that's the right approach for something that is excluded from the definition of harm, then why wouldn't that apply as well to things that are by the terms of the statute not included in the definition of harm? Well, that's a question about interpreting the statute. I think the statute is clear that that's what it says to do. I think the statute is clear in the case law that followed it has followed the test in the same manner that you're describing. And there is no guarantee that every one of your losses in the way that you categorize them are recoverable in every scenario. That's just not a guarantee. For instance, the fee shifting that's trying to be done here, obviously the CFA has a reason for, the Consumer Fraud Fact has a reason for permitting fee shifting to occur, whereas you don't have that in other scenarios. You don't have that in other cases because there's not a public policy that says the legislature wants to put that in there. But it doesn't mean you're left out and it's somehow defective that the law is as it is for a cause of action because you can't fee shift in every case. Would you agree that if this had been treated as a PLA claim, that given the fact that there was some property damage to bring the case under the PLA, that they then could claim consequential damages, including compensatory damages, that covered those flowing from workers' injuries? All of those would be recoverable under the PLA. I would be, without looking into it in an extreme way under what the PLA would allow, but under the statute, all of their claims could have been brought as PLA claims. They just didn't do that. And they opted not to do that, I think, because the large majority is attorneys. Does that include the claims involving the audibility of the alarm system? Well, the claims of the audibility of the alarm system and I... Are those compensable under the PLA? Are those the economic damages that Mr. Kalik was referring to? For the alarm system. I'm losing you a little bit. When you say the damages that flow... The claim is that there are certain representations made with respect to the alarm system that it would be audible and so forth, but it was not... It didn't function as represented. And you're asking me if the damages that flowed from that would be... Well, first of all, it's classic products claim itself, essential nature would categorize that. The question of the audibility issue from a CFA claim never gets to where... The contention is that it did not function as it was represented to some. And therefore, it's a consumer fraud type case. I understand the contention. We disagree with it for a variety of reasons. Number one is that there is no statement about the alarm, except for this device is compliant with NFPA 69. And that's where we go through this whole misrepresentation by incorporation, where they suggest that NFPA 72, which is never mentioned anywhere, is somehow incorporated into the representation itself made in the first place. That's first. Secondly, there's nothing to indicate that the alarm is at the center of this. And the alarm we're talking about here is the type of alarm in your microwave that beeps when your coffee's done. We're not talking about a fire alarm system. And that's the difference between the two because they're trying to pull in the fire alarm system and say this is equivalent to what we expected and what was represented to us. And that's not true in the first instance. Let's say the claim can be established. We're at the pleading stage. Are economic losses compensable if the plaintiff were to be able to establish its claim? Under which theory? Consumer Fraud Act and the theory that there were certain representations were made that were false. The alarm did not function as represented. So could they, are you asking me, could they leave and prove those damages? Were they able to make an affirmative claim on that? If they were to be able to establish their cause of action, if they can prove their claim, are the damages, economic damages, compensable if they establish that? I think if the CFA was applicable, I think a lot of these damages could have been brought as part of a CFA claim. But it isn't. And it isn't for the reason that as to the alarm theory, which by the way is not in that original complaint, but getting past that is the issue of the alarm is never represented to be any part of this transaction. The audibility requirements of it, they're saying it worked. There's nothing defective about it. But it wasn't loud enough, which is a classic products case. That's why we fall over on the product side. And the third side is what do we connect to the alarm feature going off in this buzzer and these workers and what happened afterward? Now that, you're saying you could get them. I'm not conceding that you would get them under the proofs of this case. And I think the court looked at that below, finding that there's nothing that they stated that would qualify as sufficient evidence to suggest that these folks hearing this buzzer were going to leave the room and run out of the building. And in fact, they knew there was a fire and sent somebody after two of them saw. It's a matter of fact that would be sent. That's correct. I agree with you. What I'm saying is you could tangentially, but you factually maybe wouldn't. And that's an issue in this as well. But you never get to a CFA claim on the alarm. It's just not pled. It's not made out. It's not part of this case ever. And this way that they make the issue that this is, in fact, some sort of a misrepresentation is nonsensical. I think Mr. Koelig has suggested that it was in the case, but I'll let him respond. Thank you. Thank you very much. Thank you. One question. If the issue is a pleading issue, as you suggested with your last answer, why not remand for the opportunity for them to amend the complaint and break out particular representations as CFA claims? Well, after six years of litigation when they haven't done that, that's one problem. The second thing is they've elected to go CFA, only CFA, and not proceed on the claim. And the third thing is the court looked below at the CFA claims and rejected each in turn, including the alarm theory, after considering their experts and within the bounds of determining if 72 applied to 69, well within the court's discretion, just rejected it. So there's nothing left of the CFA claim. In rejecting that claim, as I recall, the judge said, well, it made a sound. That's correct. It seems to be insufficient. I mean, making a sound doesn't necessarily provide an alarm to the workers in the- Well, it had a visual and it had an audible feature. And all the audibility standard that was set to it required was that it made sound. The other standard that they're trying to attach to it is a standard for a company, a building-wide fire alarm, which has nothing to do with, nor was ever anything that our company said anything or made a misrepresentation about. And that's why the court found as a matter of law that 72 was not incorporated properly. 72 was not incorporated into 69. That building-wide fire alarm standard was not incorporated into the standard for an audible alarm you'd have with your refrigerator doors left open. They're two different things. So that's why you never even get to the point where you're talking about that. And there's no representation about that anywhere. The idea that we thought that is an afterthought. Now, even if you read the Rule 9 motion, you'll see that their expert says, when this complaint was filed, that was not a thought in their head. He came up with that during the course of this litigation. And instead of amending and saying, well, now we have a different complaint or a different- even under the CFA, they never did. So to put my client in a situation after years and years of this litigation and having dealt with all the issues in this case to go back and say, now we're going to re-litigate it as a PLA claim is highly unfair. And also, in this case, with their election being what it was, the lower court dealt with those issues already. All right. Let's see what Mr. Kalek has to say. Thank you. Mr. Kalek, as you're coming up, I've looked through the complaint here. The only time I see any reference to 69 is in paragraph 30. And it also mentions 654, but it never mentions 72. And it looks to me like in paragraph 49, your basic complaint, contrary to the representations made by FICA and SSI, the FICA Explosion Protection System did not suppress and isolate the fire, which is a fair point. That sounds like a product liability claim. Where in your complaint is there anything relating to the audible alarm theory? So when you look at it from 10,000 feet, the audible alarm theory kind of jumps out at you. Well, you know, it didn't go loud enough. And people had three minutes to get out, and you couldn't hear it, and there's a problem. But I don't see anything in the complaint that mentions the audible alarm theory at all. And our position is that the reference to NFPA 69 and that there were representations that the system was going to comply with NFPA 69 is sufficient to put the defendant on notice of our claim particularly, and notice is what this is all about. What would the claim be? Is it a consumer fraud act, or is it a product liability? Only consumer fraud. But that's not pled in the complaint anywhere. Consumer fraud is the only claim that is pled in the complaint. Yeah, correct. The only claim. But it doesn't mention the fact that things couldn't be heard. I mean, you talk about indirect, elliptical, whatever you want to say, somewhere buried in a closet somewhere is mentioning 69 and somehow thinking the world should know that this deals with an audible alarm theory. Well, certainly during the course of the case they knew because we had. Yeah, but you could have then gone back and said, okay, let's amend. And they filed the Rule 9 motion saying, whoa, this is all, what are you guys doing? This is a surprise. Well, they filed two motions to dismiss, which we survived. You keep saying that, but at this point we're beyond that. Right. So this was a dispositive motion based on the facts that were developed through discovery and based on our expert reports. And our experts each had huge sections on the audibility. In fact, the raison d'etre of one of our experts was the audibility of this PISO alarm. Which they moved to stripe on the ground that it didn't comport with 9B. Which was not addressed, which was not ruled upon. Well, it was ruled upon in connection with summary judgment, right? The court then dismissed those pending motions as moot. Right, because the court, but the court did not, the court said, addressed the pleading issue and said I'm going to move on because FIKE didn't seek to dismiss based on the fact that it wasn't part of the complaint. I mean, that's what the decision actually holds. So that motion wasn't ruled upon. But our point is that we could have conformed our pleadings to the evidence, which were clearly, the defendant had notice of all of these issues and it was part of the case. It really seems like we're back at Civil Procedure 101. Just go back and amend the complaint. FM 5700, is that mentioned in the complaint? FM standards, I believe, are. FM 5700, is that mentioned in the complaint? I'm sorry, no, that's in the summary judgment briefs. Yes. I mean, the only thing I could find, the no prior failures theory is mentioned in paragraph 53. And, but it's mentioned. And the idea here, when I read through this, it really all comes down to paragraph 49. That the system didn't suppress and isolate the fire. The product didn't work. I would refer to paragraph 23, as well as to the reference to NFPA 69, as well as referring to the representation issues that we're dealing with now. Oh, understood. It contains representations that explosion suppression prevents the release of pressure, etc., reduces the deflagration pressure, extinguishes the combustion, and interfaces with the process equipment. And part of, I'm sorry. Bulletin promoted the addition, but then you basically, that's a fact you're saying here. Essentially what you're saying later on, it didn't work, gang. Part of the interfacing with the process equipment is the integration with the overall building. And you're saying it didn't work. People got hurt. The other thing I want to say is that, again, our argument is that this is purely economic loss. And the complaint does say, repeatedly, that we can't bring. But you have to assert the wrong in the complaint. I mean, the purpose is to let the other side know what it is exactly that you're claiming. Where did you do that? Again, we feel that the complaint was sufficient to put the defendant on notice and that the defendant did become, in fact, on notice of our claims during the course of litigation. And we survived two motions to dismiss. If we conclude, as the district court did, that the essence of the claim here is for a product's liability action, and even accepting that you have requested consequential damages that may not, by their terms, fall under the PLA, aren't we then taking guidance from Sinclair and the Supreme Court's interpretation of the PLA such that if the heart of the case is a product's liability claim, then the CFA claim can't proceed. It's simply subsumed within the scope of the PLA. I would not agree with that. In fact, I think that you don't get to the essential nature test and whether a loss was caused by a product until you first meet the definition of harm. We don't meet the definition of harm. And it's both a factual and a legal issue. You do to the extent of property damage. $286,000 of our claim, no doubt, meets the definition of harm. Some of your claim, given the nature of it and the harm involved, property damage, brings it within the PLA. Then what's wrong with the argument that your adversaries made that what follows from that is everything about your claim comes under the PLA? What's your authority that that's not the way that the Supreme Court would interpret the PLA? So, Dean, the restatement, this Court's decision in the State of Noster and Judge Debevoise's decision in Francis E. Parker. And that is an important decision because Judge Debevoise, as my colleague said, he separates claims that are pure economic loss from claims that are PLA harm. And he says you can pursue your Consumer Fraud Act claims for your pure economic loss and you can pursue your product liability claims for your PLA harm. And what Judge Debevoise relies on is a Supreme Court case that's not cited in our brief called Lyle Real. And what that decision says, New Jersey Supreme Court says, is in order to overcome the presumption that the CFA applies to a covered activity, a court must be satisfied that a direct and unavoidable conflict exists between application of the CFA and application of the other regulatory scheme. We stress that the conflict must be patent and sharp and must not simply constitute a mere possibility of incompatibility. Based on that Judge Debevoise held, the PLA is not dispositive of claims involving consumer fraud as the statutes relate to distinct harms and remedies that are not incompatible here. The same issue is here. Ninety-five percent of our damages are caused by an injury to others. The restatement says that is pure economic loss not cognizable under the PLA. Five percent of our damages are PLA harm. For that we have to rely on the essential nature test. And so if the court determines that the essential nature test does not apply to those five percent, so be it. But 95 percent of our damages cannot be brought under the PLA. And Frances E. Parker and the New Jersey Supreme Court Authority suggest that those damages can proceed as a consumer product. Thank you. Thank you. Very well presented. Thank you, Your Honor. We'll ask that the counsel, if you would get together with the clerk's office and have a transcript prepared of the oral argument and just split the cost if you would please.